PEERSON v. CONDON, Gdn.

No. 32718.   Sept. 16, 1947.

*184 P. 2d 785.*

L. J. Bicking, of Tulsa, for plaintiff in error.

W. H. Kisner, of Tahlequah, for defendant in error.

WELCH, J. Plaintiff's petition alleges ownership of an item of real estate by Tennie Wooton; asserts the invalidity of a deed held by defendant, and seeks to cancel the deed and quiet plaintiff's title. It is alleged that the deed was procured from Tennie Wooton without consideration and at a time when Tennie Wooton was incompetent.

Defendant, by answer, asserts ownership of the property under the deed from Tennie Wooton and denies all the allegations of plaintiff's petition in reference to the invalidity of the deed.

The deed naming defendant as grantee was executed by plaintiff's ward on the 27th day of April, 1945. Plaintiff was appointed guardian of Tennie Wooton in September, 1945, and instituted this action in October, 1945. The cause was tried in January, 1946.

Upon trial the court found the issues as contended for by plaintiff and rendered judgment in favor of plaintiff cancelling the deed and adjudging Tennie Wooton to be the owner of the property.

Upon appeal defendant presents argument on all assignments of error under five propositions. Two propositions concern the sufficiency of consideration for the deed and the sufficiency of the language used in the deed to constitute an instrument of conveyance. The other three propositions, of controlling importance as we view it, concern the weight and sufficiency of the evidence, and present the question whether the findings and judgment of the court are against the clear weight of the evidence.

The controlling rule was cited by this court in Canfield v. Canfield, 167 Okla. 595, 31 P. 2d 149:

"The test of capacity to make a deed is that the grantor shall have the ability to understand the nature and effect of the act in which he is engaged and the business he is transacting."

With that rule in mind we have examined the evidence. Plaintiff, guardian, testified to definite appearances of mental weakness during the past five years. A witness who had been a next door neighbor of Mrs. Wooton for a period of eight years testified as to frequent conversations with her and to similar indications of lack of normal mentality. Tennie Wooton herself was called as a witness and denied making a deed to the defendant. Her answers to the questions presented demonstrated, at least at the time of trial, a complete lack of understanding of the events that transpired on the day the deed was executed. (No objection to her testimony was presented in the trial or motion for new trial.) Dr. H. A. Scott testified that he was the Wooton family physician for several years, but had not seen Mrs. Wooton since March, 1943; that at that time she wasn't herself either mentally or physically; that she changed a great deal in the last year or two he was associated with her; that she began getting weaker both mentally and physically about a year before his last visit with her.

It was shown by other evidence that the defendant, though not related, was taken into the Wooton home when a small child and there resided until grown; that following his marriage he removed to another city; that Mrs. Wooton lived alone in her home for several years; that during the time defendant was a frequent visitor in her home; that a strong bond of affection existed between Mrs. Wooton and defendant; that Mrs. Wooton on several occasions expressed a desire that defendant have all her property after her death.

In April, 1945, defendant, and another who was a lawyer and notary public, appeared at the Wooton home.

The lawyer testified that Mrs. Wooton expressed a desire that defendant have her property and stated, "because he is all I have to look after me and take care of me and I want him to have it;" that she was then told that she could dispose of her property by will, which would leave the property to defendant at her death, or that she could make a contract with defendant to take care of her during her lifetime and then a deed giving defendant title at her death, or that she could give him a deed to the property now; that she inquired if a will would not require going into court, and was told yes, and then after discussion of the contract and the proposition as to the deeds she again said she wanted defendant to have the property, that he was the only person entitled to any of it; that there was some further visiting "and then I think I said to Kenneth, 'You understand now what your mother wants; she wants you to have this property,' and I said, 'Is that right, Mrs. Wooton?' and she said, 'That's right,' and then I said to Kenneth, 'If she gives you this property she wants to know that she will be taken care of,' and I said, 'Is that right, Mrs. Wooton?' and she said 'That's right' and I said to Kenneth, 'You understand that, do you?' and he said, 'Yes,' . . ." That after some further conversation the witness prepared the deed and Mrs. Wooton signed it.

The defendant and another who had lived in the home with Mrs. Wooten gave testimony concerning the acts and conduct of Mrs. Wooton tending to show that she was capable of attending and transacting her ordinary household duties and business affairs connected therewith, except for her physical infirmity.

The deed was made up on a printed form styled, "General Warranty Deed (with survivorship clause.)" The conveying clause contains this language ". . . and convey unto G. K. Peerson on the death of one the survivor to take the entire fee simple title."

Several of the witnesses testified that Mrs. Wooton's condition at the time of trial was about the same as it had been the past year except that she appeared a little more nervous and hesitant about answering questions.

It is clear from the evidence that on the date the deed was signed Tennie Wooton was 68 years of age and was a frail and sickly person; that she had been in such condition for a long period of time; that she had suffered mental and physical deterioration since her husband's death in 1941.

On the day the deed was signed the defendant and his lawyer came to the Wooton home in response to a telephone call from the lady staying at the home who informed defendant that Mrs. Wooton desired to make disposition of her property and had requested that he bring his lawyer. This lady testified that Mrs. Wooton had on several occasions expressed the desire that defendant have her property after death. At the time of the arrival of defendant at the home, Mrs. Wooton was in bed and remained in bed throughout the transactions had that day. It appears from the testimony of those present that the first suggestion in reference to disposition of the property was made to Mrs. Wooton and that all the references thereto made by her were responsive to questions or promptings from others. The deed which was read to her and which she signed contains language which might cause a person of ordinary training and experience to believe the instrument to be a conveyance to take effect only after death of the grantor.

At the trial, which was less than a year from the date of the deed, Mrs. Wooton was questioned by the court and by counsel and did not appear to have any understanding of the events and occurrences on the date of the deed.

The trial court made the following findings as reflected in the journal entry of judgment:

"Evidence being heard, and particularly the plaintiff herself having been called to the witness stand for interrogation and observation as to the condition of her mind—the court finds that she is at this time so pitifully feeble and incompetent that it is impossible to believe that she could have been otherwise than incompetent at the time of the execution of the deed in controversy. . ."

"Further, it appearing that even if considered as a deed, such intention as the grantor was competent to have at the time was testamentary in character and not with intention of present conveyance—said deed was entirely lacking the essentials of a will—and was therefore for that reason void."

We think these findings not against the clear weight of the evidence, and the judgment based thereon should be sustained.

Upon such determination the questions of the form of the deed and sufficiency of consideration for the deed require no discussion.

The judgment is affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, CORN, and LUTTRELL, JJ., concur.

L. J. Bicking, of Tulsa, for plaintiff in error.

W. H. Kisner, of Tahlequah, for defendant in error.